AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
12/08/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: __DM__ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
December 8, 2020
CENTRAL DISTRICT OF CALIFORNIA
BY Valerie Jarre DEPUTY

United States of America

v.

Hassan Kanyike,

Defendant

Case No.  2:20-mj-05936

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of April 23, 2020, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344(2) | Bank Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Lori Carmack, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    December 8, 2020

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Charles Eick, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Lori Carmack, being duly sworn, declare and state as follows:

### **I.   INTRODUCTION**

1.   I am a Special Agent ("SA") with the Department of
Homeland Security, Homeland Security Investigations ("HSI"), and
have been so employed since May 2019.  I am currently assigned
to the El Camino Real Financial Task Force within the Los
Angeles office.  My current duties include the investigation of
matters concerning bank fraud, wire fraud, identity theft, money
laundering, and other unlawful financial transactions.

2.   Prior to becoming a SA with HSI, I was employed as a
contract forensic accountant with HSI from June 2016 to May
2019, where I was responsible for supporting HSI SAs with the
financial review and analysis in money laundering
investigations.  I have supported several types of
investigations, including violations for financial, cyber,
drugs, and trade fraud.

3.   I completed six months of training at the Federal Law
Enforcement Training Center in Brunswick, Georgia.  My training
included, but was not limited to, instruction on customs law,
including commercial fraud, customs fraud, intellectual property
violations and counter-proliferation; immigration law; asset
forfeiture law; financial crimes, including check fraud, bank
fraud, and wire fraud; money laundering, including instruction
on schemes used to conceal and launder the proceeds of such
crimes; child exploitation; and general drug recognition.

4.    Throughout the course of my career, I have conducted an array of criminal investigations involving money laundering, bank fraud, and many other unlawful schemes impacting financial institutions.  I have experience conducting search, seizure and arrest warrant operations.  Recently, I have been assigned to work with the U.S. Department of Justice and other law enforcement partners to investigate possible fraud associated with the stimulus and economic assistance programs created by the federal government in response to the COVID-19 relief programs.

## II. PURPOSE OF AFFIDAVIT

5.    This affidavit is made in support of a criminal complaint against, and arrest warrant for, HASSAN KANYIKE ("KANYIKE") for a violation of 18 U.S.C. § 1344(2).

6.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. STATEMENT OF PROBABLE CAUSE

### A.    Summary of Probable Cause

7.    As set forth below, from in or around April 2020 until June 2020, KANYIKE perpetrated a scheme to obtain money, funds,

and property owned by and under the control of a financial institution by means of false and fraudulent representations, pretenses, and promises.  Specifically, there is probable cause to believe that KANYIKE has submitted false and fraudulent applications in the name of "Falcon Motors" and "HK Development" to obtain loans under the Paycheck Protection Program ("PPP") from financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC").  In addition, KANYIKE has sought to defraud the Small Business Administration ("SBA") and other lenders and financial institutions in connection with the PPP and the Economic Injury Disaster Loan ("EIDL") program.

> **B.   Background**

The Paycheck Protection Program

8.   The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through the PPP program.  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

9.   In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to

acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

10.  A PPP loan application must be processed by a participating lender.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. The SBA is a United States government agency based in Washington, D.C.

11.  PPP loan proceeds must be used by the business on certain permissible expenses, e.g., payroll costs, interest on mortgages, rent, and utilities.  In some instances, the PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

The EIDL Program

12.   The EIDL program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

13.   The CARES Act also authorizes the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of the advance is determined by the number of employees the applicant lists and certifies having.  The advances do not have to be repaid.

14.   In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period ran from January 31, 2019 to January 31, 2020.  The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

15.   EIDL applications are submitted directly to the SBA. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the applicant about employment, revenue, and costs of goods, as described above.  Any funds issued under an EIDL or advance are

issued directly by the SBA.  EIDL funds can be used for payroll expense, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

    **C.   Relevant Entities**

16.   Based on records from the California Secretary of State, Falcon Motors Inc. ("Falcon Motors") was incorporated in California on May 18, 2018, as a car dealership located in Van Nuys, within the Central District of California (hereinafter, "the Van Nuys address").  KANYIKE is both the Chief Executive Officer and Chief Financial Officer of Falcon Motors.

17.   Falcon Motors maintains a business checking account with JP Morgan Chase ("JPMC") ending in xxx0153.  Based on records received from JPMC, I know the signature card contains the name, signature, and social security number of "Hassan Shaban Kanyike," and a business address of the Van Nuys address. Based on my investigation, I know that KANYIKE has used this account to receive PPP and EIDL proceeds.

18.   HK Development International ("HK Development") is a sole proprietorship run by KANYIKE.[1]  The business address for HK Development, as listed on PPP and EIDL applications, is a residential address in Newhall, within the Central District of California (hereinafter, "the Newhall address")——which is also

---

[1] Based on documents I have reviewed, KANYIKE refers to this business as both HK Development and HK Developments. I understand these references to be to the same entity.  Hereinafter, I will refer to the business as HK Development.

the same address listed by KANYIKE on his most recent California Drivers' License as his home address.  Based on the investigation, I understand that HK Development is purportedly involved in, at least, the retail business.

19.  KANYIKE maintains a personal checking account at Wells Fargo Bank ("Wells Fargo") ending in xxx1894.  Based on records received from Wells Fargo, I know the signature card contains the name, signature, and social security number of "Hassan S Kanyike."  KANYIKE listed his employer as "HK Development," and uses the Newhall address as the mailing address.  Based on my investigation, I know that KANYIKE has used this account to receive PPP and EIDL proceeds.

20.  Lender 1 is a publicly traded real-estate investment trust headquartered in New York, New York.  Through its subsidiary, Lender 1 participated in the PPP as both a lender and a broker between borrowers and other PPP lenders.  Based on the investigation, I understand that Lender 1 likely served as a broker for a PPP loan that once approved, was ultimately funded by Bank 1, an FDIC-insured bank headquartered in West Reading, Pennsylvania.[2]

21.  Lender 2 is a non-bank finance company based in California that engages in lending to small businesses.  Lender 2 is an SBA Preferred Lender and participated as a PPP lender to small businesses.

---

[2] Based on the investigation to date, the evidence suggests that Bank 1 funded this loan; however, Bank 1 has not yet been able to confirm this point.

22.   Bank 2 is a financial institution insured by the FDIC and based in Utah.   Bank 2 is an SBA Preferred Lender and participated as a PPP lender to small businesses.

23.   Bank 3 is a financial institution insured by the FDIC and based in New York, New York.   Bank 3 is a SBA Preferred Lender and participated as a PPP lender to small businesses

24.   Bank 4 is a financial institution insured by the FDIC and based in Oakland, California.   Bank 4 is a SBA Preferred Lender and participated as a PPP lender to small businesses.

**D.   Overview of Fraud**

25.   As described further below, evidence gathered in the investigation demonstrates that between in or around April 2020 and June 2020, KANYIKE submitted, or caused to be submitted, at least seven fraudulent loan applications in order to obtain funds through the PPP and EIDL.   In these applications, KANYIKE misrepresented, among other things, the total number of employees and expenses for these businesses.   For example, in his five PPP applications for Falcon Motors,[3] KANYIKE misrepresented that Falcon Motors employed—at different times to different lenders—between 5 and 28 individuals, and that it had monthly payroll expenses between $55,100 and $189,250.   In truth, the evidence shows that KANYIKE and Falcon Motors did not support payroll activity of this size.

---

[3] Four of the five applications listed "Falcon Motors Inc" as the applicant and one application listed "Falcon Motors." I understand all applications to be related to the same entity that I have referred to here as "Falcon Motors."

26.  Additionally, KANYIKE used four different Employer Identification Numbers ("EIN") in connection with his five PPP loan applications on behalf of Falcon Motors.  I understand that an EIN is a unique nine-digit number assigned by the IRS to U.S. businesses for the purposes of identification.  These four EIN numbers are associated with the following entity names: Falcon Motors Inc., Falcon Motors, Falcon Motors Lux, and Falcon Motors Sales.  Based on the investigation, I understand that the EIN for Falcon Motors Inc. was created on or about June 19, 2018 and that the other three EINs (Falcon Motors, Falcon Motors Lux, and Falcon Motors Sales) were created after February 15, 2020.  In a PPP application, the applicant must certify that the business "was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors . . . ."  Accordingly, in each of the applications where KANYIKE listed an EIN for Falcon Motors that was created after February 15, 2020, he falsely certified that the business was in operation prior to February 15, 2020, and paid salaries or payroll taxes during that time.  Based on my training and knowledge of this investigation, I believe that KANYIKE secured multiple EINs in 2020 to help hide his fraud scheme and obtain additional PPP loans.

27.  As described in more detail below, KANYIKE successfully submitted the following five PPP loan and EIDL applications in connection with this fraud scheme:[4]

| Entity | Amount | Lender | Approximate Date | Status |
|---|---|---|---|---|
| Falcon Motors (EIN 83-094XXXX) | $137,500 | Bank 1 (PPP) | 4/6/2020 | Funded |
| Falcon Motors (EIN 85-083XXXX) | $346,300 | Lender 2 (PPP) | 4/30/2020 | Funded |
| Falcon Motors (EIN 85-080XXXX) | $420,000 | Bank 2 (PPP) | 4/23/2020 | Funded |
| HK Development | $98,750 | Bank 2 (PPP) | 4/11/2020 | Funded |
| HK Development | $149,900 | SBA (EIDL) | 6/15/2020 | Funded |

28.  In total, KANYIKE received approximately $903,800 in PPP loans for the various Falcon Motors entities, and $248,650 in PPP and EIDL proceeds for HK Development.

29.  All PPP loan proceeds associated with Falcon Motors were wired into JPMC Account xxx0153.  After receiving the $903,800, KANYIKE transferred over $700,000 to a Bank account in his home country of Uganda.

30.  Specifically, between on or about May 7, 2020 and on or about June 22, 2020, KANYIKE made 13 wire transfers totaling $762,000 from JPMC Account xxx0153 to Equity Bank Uganda Ltd in

---

[4] In addition to the five loans below, KANYIKE submitted an additional two PPP loan applications on behalf of Falcon Motors that were denied.

Kampala, Uganda, and listed "[KANYIKE's FATHER] Enterprises Kampala Ug" as the beneficiary.  These payments had no apparent business purpose.  Based on records reviewed in connection with the investigation, I understand that KANYIKE's father lives in Uganda.

31.  The PPP loan and EIDL proceeds associated with HK Development were wired into KANYIKE's Wells Fargo Account ending in xxx1894; however, based on my review of the account records, it does not appear that KANYIKE used the funds for business expenses.  For example, after receiving the loans, KANYIKE withdrew approximately $16,275 in cash, sent $5,000 to another account in Uganda, and sent $10,000 to Falcon Motors at JPMC Account xxx0153.

### E.   Falsified and Successful Loan Applications

#### 1.   Lender 1 PPP Loan to Falcon Motors

32.  On or about April 6, 2020, Lender 1 received a PPP application from "Hassan Kanyike" on behalf of Falcon Motors Inc. seeking a PPP loan in the amount $137,500.  In the application, KANYIKE represented himself to be the owner of Falcon Motors and listed the Van Nuys address as the business address.  As the owner of Falcon Motors, the loan application requested KANYIKE's residential address, and KANYIKE listed the Newhall address.  In the PPP loan package, the EIN for Falcon Motors was 83-094XXXX.

33.  The PPP application submitted to Lender 1 stated that Falcon Motors' average monthly payroll was $55,100 and that the company had five employees.  To support his application, KANYIKE

submitted a Payroll Summary Report for Falcon Motors that purported to be for the period from March 28, 2019, to March 27, 2020.  The Payroll Summary Report claimed that during this time period, Falcon Motors paid "$24,339.456 [sic]" in California tax withholding.

34.  On April 29, 2020, KANYIKE sent an email from hassan@hkdevelopments.com (Email Account-1) to Lender 1, and requested that Lender 1 increase the PPP loan amount to $300,000.[5]  The following day, KANYIKE sent another email to Lender 1, and attached a purported Payroll Report that listed 19 Falcon Motors employees (including himself) and a payroll of $385,686 for the first quarter of 2020.

35.  Based on the information provided to Lender 1 in the loan application, the initial loan request was approved and funded.  On or about May 6, 2020, Bank 1 appears to have wired $137,500 into JPMC Account xxx0153.

36.  Based on my training, experience, and knowledge of the investigation, I believe the Falcon Motors PPP loan application and supporting documents to Lender 1 contained several false and fraudulent statements.  Specifically, the loan application claimed that Falcon Motors had five employees and paid state tax withholdings of $24,339.456 to the state of California.  In response to a request for records, the California Employment Development Department ("EDD") indicated, however, that it does not have records of any employees being employed by Falcon Motors for EIN 83-094XXXX for Tax Years 2019 and 2020.

---

[5] Lender 1 ultimately denied the request to increase the loan amount.

37.   In addition, the purported Payroll Register submitted via email also contains false and fraudulent statements about the number of employees and payroll expenses for those purported employees.   In addition to EDD not having any records of any Falcon Motors employees, I have reviewed JPMC Account xxx0153, which is the business checking account for Falcon Motors, and it does not reflect payroll payments during the first quarter of 2020 totaling $385,686.   Second, KANYIKE provided the names of his purported employees and the last four digits of their social security numbers.   Several of the purported employees' social security numbers share the same last four digits.   For example, four employees share the last four digits "5284."   Based on my training, experience, and knowledge of this investigation, I know that a social security number has three parts.   The first set of three digits is based on the applicant's geographic region; the second set of digits is the group number; and the final set of digits is the serial number, which runs consecutively from 0001 through 9999.   Based on this formatting, I believe it is highly improbable that Falcon Motors could have four employees who share the same last four digits of their social security numbers.

2.   Lender 2 PPP Loan to Falcon Motors

38.   On or about April 30, 2020, Lender 2 received a PPP application from "Hassan Kanyike" on behalf of Falcon Motors seeking a PPP loan in the amount of $346,300.   The application was submitted by KANYIKE, who represented himself to be the owner of Falcon Motors.   KANYIKE provided a different and new

EIN for Falcon Motors in connection with this application: 85-083XXXX.[6]  The business address listed for Falcon Motors was the Van Nuys address.  KANYIKE did not list an email address.  As the owner of Falcon Motors, KANYIKE also provided his residential address as the Newhall address.[7]

39.   On or about May 4, 2020, KANYIKE sent an email from Email Account-1 to a Lender 2 employee that included, among other things, a copy of a Falcon Motors completed PPP application, a copy of a purported IRS Form 941 for 2019 for Falcon Motors, and a purported Payroll Register Report for the First Quarter of 2020.

40.   Based on the information provided in the application, Lender 2 approved and funded the loan.  On or about May 12, 2020, Lender 2 wired $346,300 into JPMC Account xxx0153.

41.   The PPP application submitted to Lender 2 stated that Falcon Motors' average monthly payroll was $138,520 and that the company had 18 employees.  KANYIKE submitted several purported federal tax documents that contained false statements; however, the IRS has no record of these tax documents having been submitted on behalf of Falcon Motors.  For example, KANYIKE included a purported IRS Form 940 for 2019 for Falcon Motors (EIN 85-083XXXX) that claimed that it made $1,662,240 in total payments to its employees in 2019.

---

[6] I understand that "Falcon Motors Sales" is the entity name associated with this EIN.

[7] The city name "Newhall" was cut off at "Newha" but the street number and street name were identical.

42.   KANYIKE also submitted a Payroll Register Report for Falcon Motors purportedly for the Pay Period January 1, 2020, to March 31, 2020, listing 19 employees (including himself) and claimed a total payroll of $415,560 for that period.

43.   Based on my training, experience, and knowledge of this investigation, I believe the statements about the number of employees and wages paid are false statements designed to obtain a PPP loan from Lender 2.  For example, in response to a request for records, California EDD indicated that it does not have records of any employees being employed by Falcon Motors for EIN 85-083XXXX for Tax Years 2019 and 2020.

44.   As previously discussed, I have reviewed Falcon Motor's business checking account (JPMC Account xxx0153) and was unable to find payroll expenditures for the specific employees and amounts that KANYIKE identified in the Payroll Register.

45.   KANYIKE once again provided the names and last four digits of social security numbers for his purported employees, several of which shared the same last four digits.

46.   In addition, based on the investigation, I understand that EIN 85-083XXXX was created in or around April 2020. Therefore, this entity was not in existence at the time of the alleged payroll expenditures.

47.   Moreover, as part of the SBA PPP loan application process KANYIKE falsely certified that "[t]he Applicant [85-083XXXX] was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors. . . ."

48.   Finally, at the time of this PPP loan application,
KANYIKE, like all other applicants, had to certify that
"[d]uring the period beginning on February 15, 2020 and ending
on December 31, 2020, the Applicant has not and will not receive
another loan under the Paycheck Protection Program."  However,
as detailed above, at the time of this certification, KANYIKE
had already applied for two PPP loans on behalf of Falcon
Motors, albeit by using a different EIN.  Based on my training,
experience, and knowledge of this investigation, I believe that
KANYIKE applied for multiple EINs in 2020 to help hide his fraud
scheme and obtain additional PPP loans.

3.   Bank 2 PPP Application

49.   On or about April 23, 2020, Bank 2 received a PPP
application from "Hassan Kanyike" on behalf of "Falcon Motors
Inc" seeking a PPP loan in the amount of $420,000.  The
application was submitted by KANYIKE, who represented himself to
be the owner of Falcon Motors.  The business address listed for
Falcon Motors was the Van Nuys address.  KANYIKE provided a
different and new EIN (his third) for Falcon Motors in
connection with this application: 85-080XXXX.[8]  As the owner of
Falcon Motors, KANYIKE again listed the Newhall address in the
application.

50.   On or about April 24, 2020, KANYIKE sent an email to
Bank 2 and included the following supporting documents for his
loan application: (1) a copy of his California state Drivers'

_____

[8] I understand that "Falcon Motors" is the entity name associated with
this EIN.

License, (2) a voided check from the Falcon Motors account at
JPMC (JPMC Account xxx0153), and (3) a copy of a purported 2019
Falcon Motors tax return (IRS Form 940).  Based on the
information in the application and supporting documents, Bank 2
approved and funded the PPP loan.  On or about May 8, 2020, Bank
2 wired $420,000 into JPMC Account xxx0153.

51.  The PPP application submitted to Bank 2 stated that
Falcon Motors' average monthly payroll was $168,000 and that the
company had 26 employees.  In the IRS Form 940 referenced above,
KANYIKE represented that Falcon Motors (EIN 85-080XXXX) made
$2,022,300 in total payments to its employees in 2019.  In
support of his application, KANYIKE also submitted a purported
IRS Form 941 (EIN 85-080XXXX) listing $504,000 in wages, tips,
and other compensation paid in the first quarter of 2020.  Based
on my training, experience, and knowledge of this investigation,
I believe the statements about the number of employees and wages
paid are false statements designed to obtain a PPP loan from
Bank 2.  For example, in response to a request for records,
California EDD indicated that it does not have records of any
employees being employed by Falcon Motors for EIN 85-080XXXX for
Tax Years 2019 and 2020.  Additionally, the IRS has no record of
the IRS Forms 940 and 941 included in this application that were
submitted on behalf of Falcon Motors.

52.  Based on the investigation, I understand that EIN 85-
080XXXX was created in or around April 2020 and, therefore,
could have not made payroll payments of $2,022,300 in 2019.

53.   KANYIKE also falsely certified again that "[t]he Applicant [EIN 85-080XXXX] was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors. . . ."

54.   Additionally, KANYIKE falsely certified that "[d]uring the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."  As detailed above, at the time of this certification, KANYIKE had already submitted multiple applications for PPP loans on behalf of Falcon Motors, albeit by using different EIN numbers.

### 4.   HK Development Application to Bank 2

55.   On or about April 11, 2020, Bank 2 received a PPP application from HK Developments, seeking a PPP loan in the amount of $98,750.  KANYIKE listed the business address and residential address as the Newhall address.

56.   The PPP application submitted to Bank 2 stated that HK Development's average monthly payroll was $44,080 and that the business had eight employees.  To support the application, KANYIKE submitted a purported "Payroll Summary Report" for HK Development that, among other things, represented that between March 28, 2019, and March 27, 2020, HK Development paid $528,960 in wages and $12,575.39 in California state tax withholdings.

57.   Based on the information in the application, Bank 2 approved and funded the PPP loan.  On or about April 20, 2020, Bank 2 wired $98,750 to Wells Fargo Account xxx1894.

58.   Based on my training, experience, and knowledge of
this investigation, I believe the statements about the number of
employees and wages paid are false statements designed to obtain
a PPP loan from Bank 2.  For example, in response to a request
for records, California EDD could not locate records of any
employees being employed by the EIN associated with HK
Development (46-406XXXX) for Tax Years 2019 and 2020.

59.   I have also reviewed the Wells Fargo checking account
ending in xxx1894 identified in the application to Bank 2, and
was unable to find payroll expenditures consistent with the
representations in the loan application and Payroll Summary
Report.

5.   SBA EIDL Loan on behalf of HK Development

60.   On or about June 15, 2020, KANYIKE applied for an EIDL
from the SBA on behalf of HK Development.  In the application,
KANYIKE provided the business address as the Newhall address.

61.   The application to the SBA occurred approximately two
months after KANYIKE applied for a PPP loan from Bank 2 for HK
Development.  This time, however, KANYIKE represented that HK
Development had almost double the number of employees.
Specifically, KANYIKE submitted an application to the SBA and
represented that HK Development had 15 employees (compared to 8
employees listed in the application to Bank 2).  In support of
his application, KANYIKE also represented that HK Development's
gross revenues for the 12 months prior to the date of disaster
totaled $1,600,000, and that the cost of goods sold for the 12
months prior to the date of disaster totaled $820,000.

62.   Based on the information provided to the SBA in the
application, SBA approved and funded the loan.   On or about June
22, 2020, SBA wired $149,900 to Wells Fargo Account xxx1894.

63.   Based on my training, experience, and knowledge of
this investigation, I believe the statements about the number of
employees, revenues, and expenses are false statements designed
to obtain an EIDL from the SBA.   For example, California EDD
could not locate records of any employees being employed by the
EIN associated with HK Development (46-406XXXX) for Tax Years
2019 and 2020.

64.   I have also reviewed account activity for Wells Fargo
Account xx1894, which received the EIDL funds, and it does not
reflect either the gross revenues figures, or costs of goods
sold figures represented in the EIDL application.

**F.   Falsified and Failed Loan Applications**

1.   <u>Bank 3 PPP Loan Application</u>

65.   On or about April 7, 2020, Bank 3 received a PPP
application from "Hassan Kanyike" on behalf of Falcon Motors
seeking a PPP loan in the amount of $145,000.   The EIN for
Falcon Motors in connection with this application was 83-
094XXXX, which was the same EIN used in the Lender 1
application.   The application listed KANYIKE as the "contact."

66.   Based on the information provided in the application,
Bank 3 rejected the application.

67.   The PPP application submitted to Bank 3 stated Falcon
Motors' average monthly payroll was $58,000 and that the company
had eight employees.   The PPP application included a purported

IRS Form 941 for the first quarter of 2020.  The IRS Form 941 claimed that Falcon Motors had paid $168,500 in wages, tips, and other compensation.  The application also included a purported Payroll Summary Report for Falcon Motors from March 28, 2019 to March 27, 2020, which claimed that during this time period, Falcon Motors paid "$24,339.456 [sic]" in California tax withholding.

68.  Based on my training, experience, and knowledge of this investigation, I believe the statements about the number of employees and wages paid are false statements designed to obtain a PPP loan from Bank 3.  For example, in response to a request for records, California EDD indicated that it does not have records of any employees being employed by Falcon Motors for EIN 83-094XXXX for Tax Years 2019 and 2020.

69.  Additionally, KANYIKE falsely certified that "[d]uring the period beginning on February 15, 2020, and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."  As detailed above, at the time of this certification, KANYIKE had already submitted an application for a PPP loan on behalf of Falcon Motors to Lender 1 using the same EIN number.

2.   Bank 4 PPP Loan Application

70.  On or about May 8, 2020, Bank 4 received a PPP application from KANYIKE on behalf of Falcon Motors seeking a PPP loan in the amount $473,125.  The application was submitted by KANYIKE, who represented himself to be the owner of Falcon

Motors.  KANYIKE provided a different and new EIN (his fourth) for Falcon Motors in connection with this application: 85-094XXXX.[9]  The business address listed for Falcon Motors was the Van Nuys address.  As the owner of Falcon Motors, KANYIKE also provided his residential address as the Newhall address.

71.  On or about May 15, 2020, KANYIKE sent an email to an employee at Bank 4 titled "Falcon Motors Inc- Paperwork." KANYIKE attached the following documents to his email: (1) the Articles of Incorporation filed with the California Secretary of State on behalf of Falcon Motors Inc, (2) City of Los Angeles Tax Registration Certificates for Falcon Motors Inc, and (3) Statement of Information for Falcon Motors Inc filed with the California Secretary of State.

72.  Based on the information provided in the application, Bank 4 rejected the application.

73.  The PPP application submitted to Bank 4 stated that Falcon Motors' average monthly payroll was $189,250 and that the company had 28 employees.  KANYIKE included a purported IRS Form 940 for 2019 that contained false statements.  The IRS has no record of this IRS Form 940 having been submitted on behalf of Falcon Motors.  In the IRS Form 940, KANYIKE claimed that Falcon Motors made $2,271,000 in total payments to its employees in 2019.

74.  KANYIKE also submitted a purported Payroll Register Report for Falcon Motors for the Pay Period January 1, 2020, to

---

[9] I understand that "Falcon Motors Lux" is the entity name associated with this EIN.

March 31, 2020, listing 28 employees (including himself) and claimed a total payroll of $473,125 for the period.

75. Based on my training, experience, and knowledge of this investigation, I believe these statements about the number of employees and wages paid are false statements designed to obtain a PPP loan from Bank 4. For example, in response to a request for records, California EDD indicated that it does not have records of any employees being employed by Falcon Motors for EIN 85-094XXXX for Tax Years 2019 and 2020.

76. As previously discussed, I have reviewed Falcon Motor's business checking account (JPMC Account xxx0153) and was unable to find payroll expenditures for the specific employees and amounts that KANYIKE identified in the Payroll Register.

77. KANYIKE once again provided the names and last four digits of social security numbers for his purported employees, several of which shared the same last four digits.

78. In addition, based on the investigation, I understand that EIN 85-094XXXX was created in or around May 2020. Therefore, this entity was not in existence at the time of the alleged payroll expenditures.

79. Moreover, as part of the SBA PPP loan application process KANYIKE falsely certified that "[t]he Applicant [85-094XXXX] was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors. . . ."

80. Finally, at the time of this PPP loan application, KANYIKE, like all other applicants, had to certify that that

"[d]uring the period beginning on February 15, 2020 and ending
on December 31, 2020, the Applicant has not and will not receive
another loan under the Paycheck Protection Program."  In issuing
this certification, KANYIKE also provided fraudulent information
to Bank 4.  As detailed above, at the time of this
certification, KANYIKE had already applied for several PPP loans
on behalf of Falcon Motors, albeit by using different EINs.
Based on my training, experience, and knowledge of this
investigation, I believe that KANYIKE applied for multiple EINs
in 2020 to help hide his fraud scheme and obtain additional PPP
loans.

###   G.   Additional Information that Connects KANYIKE to the Fraudulent PPP Applications

81.  As mentioned above, in connection with the submission
of his PPP applications, KANYIKE used email.  Specifically, he
used Email Account-1 to communicate with employees from Lender
1, Lender 2, and Bank 4.  These communications included the
following:

a.   On or about April 29, 2020, KANYIKE sent an email
from Email Account-1 to Lender 1, and requested that Lender 1
increase the PPP loan amount to $300,000.

b.   On or about May 15, 2020, KANYIKE sent an email
from Email Account-1 to an employee at Bank 4 titled "Falcon
Motors Inc- Paperwork."  KANYIKE attached the following
documents to his email: (1) the Articles of Incorporation filed
with the California Secretary of State on behalf of Falcon
Motors Inc, (2) City of Los Angeles Tax Registration

Certificates for Falcon Motors Inc, and (3) Statement of Information for Falcon Motors Inc filed with the California Secretary of State.

82.  In connection with the submission of his PPP application, KANYIKE used the email account hassanshaban2012@gmail.com (Email Account-2) to communicate with employees from Bank 2.  Specifically, on or about April 24, 2020, KANYIKE sent an email from Email Account-2 that included the following supporting documents for his loan application: (1) a copy of his California state Drivers' License, (2) a voided check from the Falcon Motors account at JPMC (JPMC Account xxx0153), and (3) a copy of a purported 2019 Falcon Motors IRS Form 940.

83.  In connection with the investigation, I have reviewed IP Logins associated with these two email accounts.  On or about April 6 and 7, 2020, KANYIKE logged into Email Account-1 at the IP Address 108.185.253.14.  On or about March 31, April 7, and April 20, 2020, KANYIKE logged into Email Account-2 at the IP address 108.185.253.14.

84.  According to records from Charter Spectrum, an internet service provider, the IP address 108.185.253.14 was registered in the name of KANYIKE at the Newhall address from November 11, 2019, until September 18, 2020, the date that Charter responded to the records request.  The listed "User Name" is hassan@hkdevelopments.com.

85.  Additionally, I have also reviewed records of IP address logins associated with JPMC Account xxx0153, the Bank

account that received multiple fraudulent loan disbursements. The logins are associated with the UserID "falconmotors2" and the email address hassan@hkdevelopments.com.  I have identified several log-ins during April and May 2020 at the IP address 108.185.253.14, which, as described above, is registered to KANYIKE at the Newhall Address.

## IV.  **CONCLUSION**

86.  Based on the foregoing, there is probable cause to believe that on or about April 23, 2020, KANYIKE knowingly and with the intent to defraud executed a scheme to obtain money, funds, and property from Bank 2 by means of materially false and fraudulent representations, pretenses, and promises, namely, KANYIKE submitted an application for a PPP loan in the name of Falcon Motors that contained false representations about the number of employees and the amount of monthly payroll that Falcon Motors had, in violation of Title 18, United States Code, Section 1344(2).

Attested by telephone on 12/8/2020 to me.

_____
Charles F. Eick
United States Magistrate Judge

_____
Agent Lori Carmack