E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
RICHARD E. ROBINSON(Cal. Bar No. 90840)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0713
    Facsimile: (213) 894-6269
    E-mail:   Richard.robinson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>HASSAN SHABAN KANYIKE,<br><br>      Defendant. | No. CR 21-00081-VAP<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A); DECLARATION OF RICHARD E. ROBINSON AND EXHIBITS |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorney Richard E. Robinson, hereby files this response to defendant's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (Docket No. 92).  The Court should deny defendant's motion.

//

//

This Response is based upon the attached memorandum of points and authorities, attached declaration of AUSA Robinson and exhibits, the confidential medical records of defendant filed under seal concurrently herewith, defendant's Presentence Investigation Report, the other files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 3, 2023                  Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    RICHARD E. ROBINSON
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        Defendant's motion fails to satisfy either of the two principal

4  criteria that must both be satisfied for release.  First, defendant

5  has not met his burden to establish an extraordinary and compelling

6  reason for release.  Second, defendant also has not established that

7  the relevant 18 U.S.C. § 3553(a) factors weigh in favor of release;

8  rather, those factors support defendant's continued incarceration.

9        Defendant's motion should be denied.

10

## II.   STATEMENT OF FACTS

11

### A.   Defendant's Criminal Conduct and Sentence

12        Defendant submitted eight false and fraudulent applications and

13  supporting documents for COVID-19 disaster-relief loans for his

14  businesses totaling approximately $1,775,675 from the Small Business

15  Administration ("SBA") and four SBA-approved lenders.  PSR ¶¶ 11, 20,

16  49.  Defendant secured multiple EINs from the IRS in order to

17  fraudulently obtain multiple PPP loans for the same used car

18  business.  PSR ¶ 23.  Defendant's bogus PPP loan applications to SBA-

19  approved lenders misrepresented total number of employees and payroll

20  expenses for his businesses, which defendant supported by submitting

21  fake federal payroll tax returns, payroll registers, and bank

22  records.  PSR ¶¶ 22, 25-28.  Defendant's bogus EIDL loan applications

23  to the SBA falsely represented the gross revenues and costs of goods

24  sold for his businesses.  PSR ¶¶ 34-36.  Through his fraud scheme,

25  defendant obtained loan proceeds totaling approximately $1,302,500

26  from three victim financial institutions and the SBA.  (PSR ¶¶ 11,

27  40, 49.)  Defendant misapplied and used PPP loan proceeds for his own

28  personal benefit, including the transfer of approximately $762,000 to

1   an offshore account in his father's name in Uganda, described in bank

2   account statements as for "construction funding investments."  PSR ¶¶

3   24, 30, 38, 51.

4        Defendant pleaded guilty to one count of wire fraud, in

5   violation of 18 U.S.C. § 1343, pursuant to a plea agreement. (ECF

6   51.)  At sentencing, defendant characterized his offense conduct as

7   "a moment of panic due to Covid induced desperation" (Dkt. 63, page

8   4), but the government provided evidence to the Court showing that

9   even before the COVID-19 pandemic defendant provided fake bank

10  account statements to two other lenders to obtain business loans.

11  Dkt. 68, pages 3-4, Exhibits 1 and 2.  Regarding the whereabouts of

12  the $1,302,550 defendant derived from the scheme, defendant stated to

13  the Probation Officer simply that "it was all gone."  PSR ¶ 104.

14  Defendant failed to support his claim that all the money sent to

15  Uganda was lost on a bad investment.  PSR ¶ 105.  Defendant also did

16  not disclose the whereabouts of any of the remaining $540,550 that he

17  did not transfer to Uganda.  PSR ¶¶ 104, 106.  Defendant did not, for

18  example, show that any of the loan proceeds he obtained from victim

19  lenders to were used to pay employee wages, as intended.

20       At sentencing, the Court adopted the factual recitations of the

21  PSR.  Dkt. 77, page 6 (Nov. 15, 2021 sentencing hearing transcript).

22  The Court found that defendant committed a very serious offense in

23  taking advantage of the government's extraordinary efforts during the

24  COVID-19 pandemic to alleviate the effects on small businesses and

25  companies with employees, by defendant's depleting those sources of

26  aid by more than a million dollars due to fraud.  Dkt. 77, pages 8-

27  10.  The Court also concluded that the damage done in white collar

28  cases such as defendant's is significant because a legitimate

2

1   business seeking a PPP loan may well not have gotten it because

2   defendant fraudulently obtained over a million dollars.  Dkt. 77,

3   page 11.  The Court specifically found the need to protect the public

4   from future crimes of defendant was a significant concern in this

5   case, given that defendant did not fully account for the funds he

6   stole.  Dkt. 77, page 10.  In particular, the Court noted that

7   defendant failed to provide any documentation to show where the

8   remaining $540,550 in loan proceeds went (i.e., the funds not

9   transferred to Uganda).  Dkt. 77, pages 20-21.  The Court concluded

10  that defendant's economic circumstances allow for a full and

11  immediate payment of restitution.  Dkt. 77, page 41.

12      The Court sentenced defendant to a term of imprisonment of 51

13  months (low-end of his advisory guideline range), followed by a

14  three-year term of supervised release.  The Court also ordered

15  defendant to pay restitution in the total amount of $1,302,550 and a

16  fine in the amount of $20,000, with the restitution and fine to be

17  paid immediately.  Dkt. 68.  Defendant's sentence was affirmed on his

18  appeal to the Ninth Circuit Court of Appeals.  Dkt. 90.

19      The Court continued defendant's surrender date to the Bureau of

20  Prisons ("BOP") from January 14, 2022 to February 22, 2022, at

21  defendant's request, after defendant reported that he had tested

22  positive for COVID-19, was suffering from a sinus infection, and had

23  a January 19, 2022 appointment for medical treatment.  Dkt. 79, pages

24  2, 4.  Defendant supported his request with medical reports from

25  2018, showing he received medical treatment of his sinus condition by

26  using a nasal spray.  Dkt. 79, Exhibit B pages 10-11.  Defendant's

27  chronic sinus issues were known to the Court at time of his

28  sentencing.  PSR ¶ 85.  Less than a week before defendant's scheduled

surrender date, defendant moved the Court for an additional 90-day continuance by claiming that he had a chronic sinus condition and sinus infection, and had scheduled outpatient sinus surgery for mid-March 2022, to be followed by a two-month recovery period.  Dkt. 85. Defendant provided no justification for why he waited to schedule elective sinus surgery until after his surrender date, nor did he provide any evidence that the BOP is incapable of addressing his sinus issues while he is in custody.  Dkt. 86, pages 2-4.  The Court denied defendant's motion, finding no good cause shown.  Dkt. 87. Defendant timely surrendered to BOP on February 22, 2022, to commence serving his sentence.  Robinson Decl. ¶ 3.

To date, defendant's payments to satisfy his ordered $1,302,550 restitution, $20,000 fine, and $100 special assessment total only $225.  Declaration of Richard E. Robinson ("Robinson Decl.") ¶ 17.

**B.    Incarceration, Projected Release Date, and Health**

Defendant is currently serving his sentence at FCI Victorville Medium 1.  Dkt. 92, page 1-2.  Defendant has served 15 months of his 51-month sentence, i.e., less than 30%.  According to BOP, the expiration of the full time of defendant's sentence is May 5, 2026; and his projected release date is April 7, 2025.  Robinson Decl. ¶ 3, Exhibit 1.

Defendant's medical records reflect that defendant's current health problems are (1) allergic rhinitis and (2) a deviated nasal septum.  Robinson Decl. ¶ 7, Exhibit 3 (under seal).  Defendant's Medical Duty Status Assignments are regular duty, with no medical restrictions.  Defendant's Current Case Assignments are "Care 1 Healthy or Simple Chronic Care," which is the lowest level of health care BOP deems typically needed by a healthy inmate.  Dkt. 92,

Exhibit B4 page 34.  Robinson Decl. ¶ 8.  Defendant's medical records do not indicate that his ability to provide self-care within the correctional facility environment is substantially diminished by a serious medical condition or any other cause.  Robinson Decl. ¶ 16.

Defendant's sinus problems were evaluated by BOP medical staff and he was prescribed medication (nasal spray), with follow-up at Sick Call as needed.  Defendant was also referred to Radiology for X-Rays of his sinuses.  The X-Rays of defendant's sinuses found his sinuses clear, with no radiological evidence for sinusitis.  Robinson Decl. ¶ 9, Exhibits 5 and 6 (under seal).

After a full health examination and the evaluation and treatment of defendant's sinus problems in April 2022, defendant had a mental health screening in May 2022 by BOP and denied the need for mental health services.  He specifically denied being the victim of sexual abuse or harassment while in custody.  Robinson Decl.  ¶ 10, Exhibit 7 (under seal).  In July, 2022, however, defendant for the first time alleged an incident of sexual abuse of defendant by a BOP medical staff member during the course of defendant's health examination in April 2022.  Defendant claimed that mental anguish and trauma he had suffered in the past had been brought back when he was asked to strip down by the medical staff member conducting the examination and then made a comment about defendant being circumcised.  Robinson Decl. ¶ 11, Exhibit 8 (under seal).

After defendant made these sexual abuse allegations, a BOP Psychologist interviewed him the same day regarding them and prepared a Psychology Services Sexual Abuse Intervention report.  Defendant told the Psychologist that he did not endorse any mental health symptoms but had been staying in his cell more than usual.  Defendant

declined advocate services offered by the Psychologist, as well as
offered contact information for both local and national sexual abuse
service.  Defendant denied fear of retaliation.  Defendant was then
placed on the waitlist for a BOP trauma and resilience workshop.
Robinson Decl. ¶ 12, Exhibit 9 (under seal).

    **C.    Defendant's Current Motion for Compassionate Release and
Exhaustion of Administrative Remedies**

    Defendant filed a compassionate-release request with BOP based
on medical debilitated condition and COVID concerns before filing his
request in this Court.  The BOP denied the request on January 26,
2023.  Dkt. 92, p. 26.  Defendant also submitted to BOP a claim of
sexual abuse by a BOP staff member, which BOP denied on November 17,
2022.  Dkt. 92, Exhibit B1 page 31; Robinson Decl. ¶ 13, Exhibit 10
(under seal).

    Now, before this Court, defendant renews his request for
compassionate release based on claims of medical debilitated
condition and sexual abuse by a BOP medical staff member.  The
government does not dispute that defendant has exhausted his
administrative remedies.

    Although defendant's compassionate release request to BOP was
based, in part, on his claim that COVID-19 presented a severe and
dangerous risk to him because of his alleged propensity for viral
infections (Dkt. 92, page 28), he appears to have abandoned that
ground in his motion to this Court.  His motion makes no reference to
COVID-19 as a significant health risk to defendant at this time.
This is understandable, given the reduced COVID-19 risk and
mitigation efforts where defendant is incarcerated.  FCI Victorville
Medium 1 is currently operating at BOP COVID-19 operational Level 1,

the lowest level of mitigation for risk and spread of COVID-19.

https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp

There are 1,536 inmates at FCI Victorville Medium 1, plus 200 inmates

at the Camp.   https://www.bop.gov/locations/institutions/vim/

Currently, 0 inmates are testing positive and 0 inmates are pending

COVID-19 tests at this facility.

https://www.bop.gov/coronavirus/covid19_statistics.html

Moreover, defendant has not tested positive for COVID-19 or reported

suffering from COVID-19 illness while in BOP custody.   Robinson Decl.

¶ 4.   Defendant declined to receive the MODERNA COVID-19 vaccine.

Robinson Decl. ¶ 6, Exhibit 2 (under seal).[1]

Defendant's motion asserts these reasons for why he should

receive compassionate release: (1) denial of medical care with

respect to his sinuses for over 12 months; (2) sexual abuse of

defendant by the BOP medical staff member during his examination; and

(3) denial of psychological care after defendant's sexual abuse by

the staff member.   Dkt. 92, pages 8-10.

**III. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE**

After a sentence is imposed, the "rule of finality" generally

forbids its modification.   Freeman v. United States, 564 U.S. 522,

526 (2011) (plurality opinion); Dillon v. United States, 560 U.S.

817, 824 (2010)(judgment of conviction that includes sentence of

imprisonment constitutes a final judgment and may not be modified by

a district court except in limited circumstances.); United States v.

---

[1] Absent medical evidence that a particular defendant is "unable to receive or benefit from a vaccine," the incarceration of a defendant who "has access to the COVID-19 vaccine" is not "an 'extraordinary and compelling reason' warranting a sentence reduction."   United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021).

*Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).  Compassionate release is one of the "few narrow exceptions," *Freeman*, 564 U.S. at 526, allowing a court to "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment," 18 U.S.C. § 3582(c)(1)(A); *Aruda*, 993 F.3d at 799-800.

Because this relief is drastic and permanent, courts are never obligated to award it.  Rather, this Court "may" reduce a sentence but only if the defendant satisfies three statutory requirements.

*First*, the Court can adjudicate a request for compassionate release only after the defendant has met an administrative exhaustion requirement.  Defendant has met the exhaustion requirement here.

*Second*, in evaluating compassionate release requests, courts must determine whether a defendant has presented "extraordinary and compelling reasons" for release.  18 U.S.C. § 3582(c)(1)(A)(i).[2]  The Ninth Circuit has held that there are no currently "applicable policy statements," 18 U.S.C. § 3582(c)(1)(A), defining what reasons are "extraordinary and compelling" where a defendant moves for compassionate release.  *Aruda*, 993 F.3d at 801-02.  Accordingly, district courts have discretion to determine whether a defendant's proffered reasons are "extraordinary and compelling," and that discretion may be informed but not strictly limited by the policy statements in U.S.S.G. § 1B1.13.  *Aruda*, 993 F.3d at 802.  Nonetheless, the plain meaning of the term "extraordinary and compelling" reflects Congress's intent that only rare circumstances

---

[2] 18 U.S.C. § 3582(c)(1)(A)(ii) authorizes an alternative basis for release but only if a defendant is at least 70 years old.  That provision does not apply here.

should qualify for release.  See Roberts v. Dist. Ct., 339 U.S. 844, 845 (1950) (per curiam) ("extraordinary" remedies are reserved for "rare" cases).  Section 3582 does not authorize a "plenary resentencing proceeding." United States v. Kelley, 962 F.3d 470, 477 (9th Cir. 2020) (the First Step Act "does not permit a plenary resentencing").  As explained below, defendant has not established an extraordinary and compelling reason for release.

Third, even if the first two requirements are met, courts must consider the "factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(2).  A court should deny a sentence reduction if the defendant does not establish that the balance of the applicable § 3553(a) factors weigh in favor of release.  United States v. Keller, 2 F.4th 12788, 1283-84 (9th Cir. 2021)(district court did not abuse its discretion in denying compassionate release based on § 3553(a) factors).  As explained below, defendant has not met this requirement either.

## IV. ARGUMENT

Defendant's motion fails on either of two independent grounds.  First, despite his health concerns, defendant has not presented an extraordinary and compelling reason for release.  Second, the 18 U.S.C. § 3553(a) factors do not weigh in favor of release.

### A. Defendant Has Failed to Establish an Extraordinary and Compelling Reason for Release

Defendant has provided no evidence that BOP lacks the ability to properly manage defendant's health.  His allegations that he was debilitated and denied medical care with respect to his sinuses for over 12 months is not supported by any medical records or other evidence.  To the contrary, BOP medical records show that defendant

9

was evaluated by BOP medical staff concerning his sinus problems in early April 2022, including with the use of X-Rays that found no evidence of sinusitis.  Defendant is being provided medication (nasal spray) for his sinuses.  Robinson Decl. ¶ 9, Exhibit 4 (under seal).  Defendant's use of nasal spray is the same course of medical treatment defendant followed for his chronic sinus problem prior to BOP custody, dating back to at least 2018.

Moreover, defendant cited his chronic sinus problems to the Court when defendant sought to delay his surrender to BOP.  Just as the Court found that defendant's alleged sinus problems did not show good cause to delay his surrender, the Court should likewise find they fail to establish an extraordinary and compelling reason to release him from prison now.  Defendant has not shown that his chronic sinus problems, with the medical treatment provided by BOP, constitute a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of FCI Victorville Medium 1 and from which he is not expected to recover.  Robinson Decl. ¶ 16.  Cf. U.S.S.G. § 1B1.13, comment. (n.1(A)(ii).[3]

Defendant's allegations that he suffered sexual abuse by a BOP medical staff member and was denied psychological care for it are also not supported by any medical records or other evidence.  Defendant complains that he was needlessly asked to strip down and have his penis examined, but his disrobing and a genitals examination was inherent in BOP medical staff conducting a full health

---

[3] Proposed Amendments to the Sentencing Guidelines (Preliminary) April 5, 2023, if adopted later this year, would incorporate the substance of the Application Note in § 1B1.13 itself. https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230201_RF-proposed.pdf

examination.  Robinson Decl. ¶ 14, Exhibit 4 (under seal).  That defendant subsequently denied during a psychology services intake screening that he had ever been a victim of sexual abuse while in custody, and denied the need for mental health services, also casts some doubt on his claim of prior sexual abuse by BOP medical staff. Robinson Decl. ¶ 12, Exhibit 9 (under seal).  Contrary to defendant's allegations that he was denied psychological care, his medical records show he was interviewed by a BOP Psychologist about the incident the date he reported it to medical staff, receive psychological counseling the same day he reported the alleged incident.  Id.

In any event, even if the incident occurred as defendant claims, it is not so serious as to constitute a form of sexual abuse that would warrant his early release from prison.  For this alleged incident, defendant makes no specific allegation that he experienced any physical sexual contact with or touching of a sexual nature by a BOP staff.  Robinson Decl. ¶ 15.  Therefore, it would not constitute a "sexual act," as defined in 18 U.S.C. § 2246(2).[4]

**B.   The 18 U.S.C. § 3553(a) Factors Do Not Support Defendant's Request for Release**

Defendant's motion independently should be denied based on the 18 U.S.C. § 3553(a) factors.  Those factors--which this Court considered when imposing defendant's sentence--do not support his

_____

[4] Proposed Amendments to the Sentencing Guidelines (Preliminary) April 5, 2023, include a revision to § 1B1.13 to include "Victim of Sexual Abuse" as an extraordinary and compelling reason for reduction of imprisonment.  To qualify for Victim of Sexual Abuse, however, the sexual abuse must involve a "sexual act," as defined in 18 U.S.C. § 2246(2), which the incident as described by defendant does not.

11

request for premature, permanent release.  Rather, they support his original sentence.

### 1.    Defendant Committed a Serious Offense Warranting the Sentence the Court Imposed

"[T]he nature and circumstances of the offense," and the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" all weigh against defendant's motion for release.  18 U.S.C. §§ 3553(a)(1), (2)(A).

As the Court found at defendant's sentencing, defendant committed a very serious offense that warranted a 51-month sentence. Defendant stole $1.3 million in loan proceeds and thereby depleted sources of aid during the COVID-19 pandemic that were needed by legitimate businesses.  More than $1 million of the loan proceeds were stolen from financial institutions, with the bulk of the proceeds transferred offshore.  PSR ¶¶ 51, 52.

Releasing defendant now, after he has served less than a third of his 51-month prison sentence, would not provide just punishment.

### 2.    Defendant Remains a Danger to the Community, and Public Safety Counsels Against Early Release

The need "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant" also counsel against defendant's request for early release.  18 U.S.C. §§ 3553(a)(2)(B), (C).  The fact that defendant may not have engaged in violence does not negate his dangerousness if released.  Danger may "encompass pecuniary or economic harm."  United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992).

The record here reflects that defendant poses a real and continuing danger to the community.  At sentencing, the Court

12

specifically found the need to protect the public from future crimes of defendant was a significant concern, given that defendant did not fully account for the funds he stole.  That concern remains. Defendant has made no effort to marshal any of the missing stolen funds to pay his restitution and fine obligations.  Robinson Decl. ¶ 17, Exhibit 11 attached.

****

At bottom, granting compassionate release would undermine the 18 U.S.C. § 3553(a) factors, resulting in an effective sentence far below the applicable Guideline range.  The law, and the specific facts of defendant's case, do not support that result.

**V.   CONCLUSION**

Defendant's motion for release should be denied.

Dated: May 3, 2023                  Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    RICHARD E. ROBINSON
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

1

## **DECLARATION OF RICHARD E. ROBINSON**

2      I, Richard E. Robinson, declare as follows:

3      1.   I am the Assistant United States Attorney who prosecuted

4  defendant Hassan Kanyike ("defendant") in United States v. Hassan

5  Kanyike, Case No. CR 21-00081-VAP.  I make this declaration in

6  support of the government's response to defendant's pro se motion for

7  compassionate release and sentence reduction.  Dkt.  92.

8      2.   In connection with preparing the government's response, I

9  obtained from BOP Attorney JoAnna Wilson printouts of BOP records

10 concerning defendant as of April 21, 2023, including those described

11 below.

12     3.   As reported in defendant's Inmate Data, attached as Exhibit

13 1, and verbally confirmed to me by BOP attorney Wilson: Defendant

14 commenced serving his 51-month sentence in BOP custody on February

15 22, 2022, assigned to FCI Victorville Medium 1.  Defendant received

16 jail credit of 15 days, for time in custody following his arrest on

17 the complaint in this case in December 2020.  The expiration of the

18 full term of defendant's sentence is May 5, 2026.  Defendant's

19 projected release date is April 7, 2025.

20     4.   I have reviewed all defendant's BOP medical records

21 provided to me by BOP Attorney Wilson, including defendant's initial

22 Health Screen report when he surrendered to BOP on February 22, 2022,

23 and defendant's full Heath Services History & Physical administered

24 on April 7, 2022.  I find no record indicating that defendant has

25 tested positive for COVID-19 or reported suffering from COVID-19

26 illness while in BOP custody.

27     5.   Because defendant's medical reports contain confidential

28 medical information concerning defendant not otherwise made public in

1   his motion, the government will file them under seal and reference

2   them in the government's response and this declaration as "See

3   Exhibit [] (under seal)."  Attached to this declaration are Exhibits

4   1 and 11, while Exhibits 2 through 10 are filed under seal.

5       6.   Defendant declined the MODERNA COVID-19 vaccine offered to

6   him by BOP on March 23, 2022, as reported in defendant's signed

7   COVID-19 Vaccine Consent – Inmate form.  See Exhibit 2 (under seal).

8       7.   Defendant's current health problems are (1) allergic

9   rhinitis and (2) a deviated nasal septum, as reflected in his Health

10  Service Health Problems report for conditions diagnosed on April 7,

11  2022.  See Exhibit 3 (under seal).  These are, of course, the same

12  health conditions claimed by defendant in his compassionate release

13  motion.

14      8.   Defendant's compassionate release motion at page 34

15  includes, marked as B4, the first page of his BOP Individualized

16  Needs Plan – Program Review.  As this report shows, defendant's

17  Medical Duty Status Assignments are regular duty, with no medical

18  restrictions.  This reports also shows that defendant's Current Case

19  Assignments are "Care 1 Healthy or Simple Chronic Care," which BOP

20  Attorney Wilson advised me is the lowest level of health care BOP

21  deems typically needed by a healthy inmate.

22      9.   Defendant's most recent full health examination by BOP is

23  reflected in his Health Services History & Physical report for April

24  7, 2022, conducted and prepared by a BOP MLP (mid-level practitioner)

25  medical staff member.  See Exhibit 4 (under seal).  In addition, a

26  Health Services Clinical Encounter report on April 7, 2022, indicates

27  defendant was also evaluated at that time by the same medical staff

28  member responding to defendant's chief complaint of bleeding from his

nose, with a reported history of chronic nasal allergies for years and sinus problems.  Defendant was prescribed medication (nasal spray) and referred to Radiology for X-Rays of his sinuses, with follow-up at Sick Call as needed.  See Exhibit 5 (under seal). Subsequent X-Rays of defendant's sinuses found his sinuses clear, with no radiographic evidence for sinusitis.  See Exhibit 6 (under seal).

10.  Defendant had a Psychology Services Intake Screening by BOP on May 12, 2022.  In this screening, defendant endorsed no current mental health symptoms, denied the need for mental health services, reported he is adjusting to the institution, and denied having any issues on the compound.  Defendant was specifically screened for Risk of Sexual Victimization and Abusiveness, and asked if he had ever been the victim of sexual abuse or harassment while in custody, to which defendant responded, "No."  See Exhibit 7 (under seal).

11.  BOP records reflect that on July 7, 2022, defendant -- for the first time -- reported to BOP Health Services that he was having trouble sleeping and a lot of depression due to his physical health examination on April 7, 2022.  Defendant claimed that mental anguish and trauma he had suffered years ago from sexual assaults had been brought back when he had come in for an exam for rhinitis and was asked to strip down and then a comment was made about defendant being circumcised.  The BOP registered nurse to whom defendant complained assessed that defendant had no signs or symptoms of physical injury and no complaints of physical pain.  She provided defendant Access to Care counseling and told defendant to follow-up at Sick Call as needed.  The foregoing is reported in a Health Services Clinical Encounter dated July 7, 2022.  See Exhibit 8 (under seal).

12.   As reflected in a Psychology Services Sexual Abuse Intervention report dated July 7, 2022, defendant was also interviewed by a BOP Psychologist about the alleged sexual abuse incident and claimed that he was reminded of it after watching a PREA (Prisoners Rape Elimination Act) video.  Defendant reported that he did not endorse any mental health symptoms but had been staying in his cell more than usual.  Defendant declined advocate services offered by the BOP Psychologist, as well as offered contact information for both local and national sexual abuse service. Defendant denied fear of retaliation.  Defendant was placed on the waitlist for the trauma and resilience workshop.  See Exhibit 9 (under seal).

13.   Defendant thereafter alleged staff sexual misconduct to BOP and requested a transfer as an administrative remedy, by claiming that during his physical examination on April 7, 2022, the BOP medical staff member unnecessarily instructed defendant to "drop my pants" and "complemented my penis," and allegedly made lewd gestures. (Defendant repeated this description of alleged sexual abuse by the BOP medical staff member in his compassionate release motion.  Dkt. 92, pages 6-7.)  After review, BOP denied and closed defendant's administrative remedy claim on November 17, 2022.  See Exhibit 10 (under seal).

14.   The BOP report form used by medical staff for defendant's health examination on April 7, 2022, provides for medical staff to examine defendant's genitalia as a routine part of the exam.  See Exhibit 4 (under seal) page 10.  A complete medical examination of defendant is not optional.  BOP Program Statement 5290.15 at page 4 provides that after an inmate's intake screening, a complete medical

17

evaluation is subsequently conducted in accordance with BOP's Health Services Manual.  https://www.bop.gov/policy/progstat/5290_015.pdf [accessed May 3, 2023].

15.   In my review of defendant's records provided by BOP Attorney Wilson, I could find no specific allegation by defendant that he had experienced any physical sexual contact with or touching of a sexual nature by BOP medical staff, or any evidence that would show defendant was a victim of such sexual abuse.

16.   In my review of defendant's BOP records, I found no medical record indicating that defendant is suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes defendant's ability to provide self-care within the environment of FBI Victorville Medium 1 and from which defendant is not expected to recover.  As noted above, defendant's own exhibit indicates he has been cleared for regular duty by BOP, with no medical restrictions.

17.   Attached as Exhibit 11 is a Finance History report for defendant, provided to me by AUSA Robert Lester of this Office's Asset Forfeiture and Recover Section.  At my request, AUSA Lester retrieved this report from the Department of Justice system for monitoring payments by convicted defendants.  The report shows that to date defendant's payments to satisfy his ordered $1,302,550 restitution, $20,000 fine, and $100 special assessment total only $225.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that I signed this declaration on May 5, 2023, in Los Angeles, California.

s/ *Richard E. Robinson*
RICHARD E. ROBINSON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

```
  LOSA0           *         PUBLIC INFORMATION        *      04-21-2023
PAGE 001          *            INMATE DATA            *      07:20:54
                              AS OF 04-21-2023


REGNO..: 21355-509 NAME: KANYIKE, HASSAN

                         RESP OF: VIM
                         PHONE..: 760-246-2400    FAX: 760-246-2461
                                                  RACE/SEX...: BLACK / MALE
                                                  AGE:  31
PROJ REL MT: GOOD CONDUCT TIME RELEASE            PAR ELIG DT: N/A
PROJ REL DT: 09-19-2025                           PAR HEAR DT:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

```
   LOSA0         *        PUBLIC INFORMATION        *        04-21-2023
PAGE 002         *           INMATE DATA            *        07:20:54
                         AS OF 04-21-2023


REGNO..: 21355-509 NAME: KANYIKE, HASSAN


                    RESP OF: VIM
                    PHONE..: 760-246-2400    FAX: 760-246-2461
FSA ELIGIBILITY STATUS IS: ELIGIBLE


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.


HOME DETENTION ELIGIBILITY DATE....: 11-04-2024


FINAL STATUTORY RELEASE FOR INMATE.: 09-19-2025 VIA GCT REL
          WITH APPLIED FSA CREDITS.: 165  DAYS
THE INMATE IS PROJECTED FOR RELEASE: 04-07-2025 VIA FSA REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------


COURT OF JURISDICTION...........: CALIFORNIA, CENTRAL DISTRICT
DOCKET NUMBER...................: LACR 21-00081-VAP
JUDGE...........................: PHILLIPS
DATE SENTENCED/PROBATION IMPOSED: 11-15-2021
DATE COMMITTED..................: 02-22-2022
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00        $00.00          $00.00       $00.00


RESTITUTION...: PROPERTY: NO  SERVICES: NO        AMOUNT: $1,302,550.00


-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 820      COMMUNICATIONS ACT
OFF/CHG: 18:1343 WIRE FRAUD


 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   51 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 DATE OF OFFENSE................: 06-30-2020


G0002       MORE PAGES TO FOLLOW . . .
```

```
    LOSA0          *          PUBLIC INFORMATION          *      04-21-2023
PAGE 003 OF 003 *              INMATE DATA                *      07:20:54
                          AS OF 04-21-2023


REGNO..: 21355-509 NAME: KANYIKE, HASSAN


                    RESP OF: VIM
                    PHONE..: 760-246-2400   FAX: 760-246-2461
------------------------CURRENT COMPUTATION NO: 010 ------------------------


COMPUTATION 010 WAS LAST UPDATED ON 02-25-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-01-2022 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 02-22-2022
TOTAL TERM IN EFFECT............:    51 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     4 YEARS       3 MONTHS
EARLIEST DATE OF OFFENSE........: 06-30-2020

JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                   12-08-2020    12-22-2020


TOTAL PRIOR CREDIT TIME.........: 15
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 229
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 09-19-2025
ELDERLY OFFENDER TWO THIRDS DATE: 12-06-2024
EXPIRATION FULL TERM DATE.......: 05-06-2026
TIME SERVED.....................:     1 YEARS       2 MONTHS      15 DAYS
PERCENTAGE OF FULL TERM SERVED..: 28.3
PERCENT OF STATUTORY TERM SERVED: 33.2

PROJECTED SATISFACTION DATE.....: 04-07-2025
PROJECTED SATISFACTION METHOD...: FSA REL
     WITH FSA CREDITS INCLUDED...: 165




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

**EXHIBIT 11**

## Finance History

| Name | CDCS Number | Original Liability | Current Liability | Judgment Date | Life Cycle Status |
|------|-------------|--------------------|--------------------|---------------|-------------------|
| Hassan Kanyike | 2021A23436 | $1,322,650.00 | $1,322,425.00 | 11/15/2021 | ASGND |

| Posting Date | Effecti Date | Co | F | r | Amount | Se | Related Seq | User | Offi | District | PC |
|--------------|--------------|------|----|---|---------|-------|-------------|------|------|----------|-----|
| 04/19/23 | 03/13/23 | PMNT | CB | | -$25.00 | 000012 | | CDCS | % | % | |
| 01/14/23 | 12/12/22 | PMNT | CB | | -$25.00 | 000010 | | PEGA_SCHEDL | % | % | |
| 10/25/22 | 09/12/22 | PMNT | CB | | -$25.00 | 000008 | | PEGA_SCHEDL | % | % | |
| 07/15/22 | 06/13/22 | PMNT | CB | | -$25.00 | 000006 | | PEGA_SCHEDL | % | % | |
| 04/22/22 | 03/11/22 | PMNT | CB | | -$25.00 | 000004 | | PEGA_SCHEDL | % | % | |
| 12/21/21 | 12/17/21 | PMNT | CL | | -$100.00 | 000003 | | PEGA_SCHEDL | % | % | |
| 11/22/21 | 11/22/21 | IMPO | | | $1,322,650.00 | 000001 | | LLIN | USAO | CAC | |